1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9    GABRIEL KORTLEVER, SY
     EUBANKS, and ALL OTHERS
     SIMILARLY SITUATED,                    No.
10
                Plaintiffs,                 **COMPLAINT – CLASS ACTION
11                                          FOR DECLARATORY AND
           v.                               INJUNCTIVE RELIEF**
12
     WHATCOM COUNTY,
13   WASHINGTON; WHATCOM
     COUNTY SHERIFF'S OFFICE
14
                Defendants.
15

16                     **I.    INTRODUCTION**

17   1.  Defendants deny life-saving medications to Plaintiffs, who are people suffering from

18       disabling opioid use disorder in the Whatcom County Jail (the "Jail").

19   2.  Defendants' policy and practice of denying medications to treat opioid use disorder to non-

20       pregnant individuals is both dangerous and discriminatory.  It singles out a particularly

21       vulnerable group of disabled people, forces them to suffer unnecessarily from painful opioid

22       withdrawal, and subjects them to an increased risk of relapse and overdose death.  This is a

23
     Complaint - 1                          **AMERICAN CIVIL LIBERTIES UNION OF
                                            WASHINGTON FOUNDATION**
                                            901 FIFTH AVENUE #630
                                            SEATTLE, WA 98164
                                            (206) 624-2184

violation of the Americans with Disabilities Act (ADA), which prohibits discrimination on the basis of disability.

3.  Plaintiffs bring this civil rights class action on behalf of themselves and others similarly situated to seek judicial relief from the suffering and harm caused by Defendants.

4.  The United States, Washington State, and Whatcom County (the "County") are all dealing with a deadly opioid epidemic. In 2016, there were 42,249 opioid overdose deaths in the United States, 709 of which were in Washington.[1] In 2016, at least 18 people died from heroin-related overdoses in Whatcom County, more than double the number of people killed by motor vehicle accidents.[2] These deaths are preventable.

5.  Opioids of all kinds are highly addictive. People suffer from opioid use disorder (OUD) when they cannot control their opioid use, use opioids in a risky way, have impaired social functioning, and experience physical tolerance and withdrawal.  OUD is a chronic condition often accompanied by changes to brain chemistry.

6.  OUD qualifies as a disability under the ADA.

7.  People suffering from OUD who are forced into withdrawal in a jail setting are placed at a higher risk from overdose death after release into the community. If their OUD remains untreated, there is a good chance that they will reuse opioids after withdrawal at their former dosage, which their bodies can no longer tolerate.

---

[1] Puja Seth et al., Centers for Disease Control and Prevention, *Overdose Deaths Involving Opioids, Cocaine, and Psychostimulants — United States, 2015–2016*, 67 Morbidity and Mortality Weekly Report 349, 349-358 (March 29, 2018), *available at* https://www.cdc.gov/mmwr/volumes/67/wr/mm6712a1.htm.
[2] Whatcom County Medical Examiner, *Annual Report* (2016), *available at* https://www.whatcomcounty.us/ArchiveCenter/ViewFile/Item/8323.

Complaint - 2

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

8. Medication-Assisted Treatment ("MAT") is an evidence-based standard of care for treatment of OUD.  MAT, including buprenorphine and methadone, are life-saving medications. Opioid abuse changes the reward circuitry of the brain, negatively affecting cognition, emotion and behavior.  MAT counteracts this.  Many people with opioid use disorders need to remain on MAT for many years, and in some cases their entire lives, to treat their condition and decrease the risk of relapse and overdose.

9. Defendants provide MAT to pregnant women with OUD, but deny this treatment to all others who suffer from OUD.

10. The ADA prohibits discrimination on the basis of disability.

11. Defendants' policy and practice of denying life-saving medication to people suffering from OUD is discrimination in violation of the ADA.

12. Plaintiffs seek declaratory and injunctive relief to end Defendants' unlawful discrimination and prohibit Defendants from denying Plaintiffs and others who are similarly situated access to life-saving medication.

## II.      JURISDICTION AND VENUE

13. This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1343.  Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201(a) and 2202, and 42 U.S.C. § 12117(a).

14. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), in that Plaintiffs' claims for relief arose in this District and one or all of the Defendants reside in this District.

Complaint - 3

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

### III.    PARTIES

15. Named Plaintiff Sy Eubanks is a 46 year-old man with OUD who is serving a criminal sentence at Whatcom County Jail.  Mr. Eubanks has been addicted to opioids since he was 18 years old, when he had knee surgery to correct a high school wrestling injury.  Mr. Eubanks has been treated with MAT for much of the last fifteen years, either methadone or buprenorphine (Suboxone), as directed by his health care providers.  Mr. Eubanks is a qualified individual with a disability as that term is defined in 42 U.S.C. § 12102(1).

16. Named Plaintiff Gabriel Kortlever is a 24 year-old man with OUD who is in pretrial detention at the Whatcom County Jail.  Mr. Kortlever has been addicted to opioids since he was 16 years old.  Mr. Kortlever began taking buprenorphine (Suboxone) as prescribed by his physician in mid-March 2018.  Mr. Kortlever is a qualified individual with a disability as that term is defined in 42 U.S.C. § 12102(1).

17. Defendant Whatcom County is a local government chartered under the laws of Washington, *see* Wash. Rev. Code Chapter 36, and a public entity as defined in 42 U.S.C. § 12131(1)(A). The County operates and manages the Whatcom County Jail and is, and was at all relevant times mentioned in this complaint, responsible for the actions, inactions, policies, procedures, and practices of the Whatcom County Sheriff's Office.  The County retains the ultimate authority over and responsibility for ensuring the health, safety, and welfare of Plaintiffs and the class members they seek to represent in a manner that comports with all state and federal constitutional and statutory obligations.  *See* Wash. Rev. Code § 70.48.071.

18. Defendant Whatcom County Sheriff's Office is a department of the Whatcom County executive branch and a public entity as defined in 42 U.S.C. § 12131(1)(B).  The Sheriff's

Complaint - 4

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

1    Office is responsible for the day-to-day operations of the Whatcom County Jail, including

2    promulgating and enforcing Jail policies and ensuring Jail compliance with state and federal

3    constitutional and statutory obligations.

### IV.    FACTS ENTITLING PLAINTIFFS TO RELIEF

**A.    There is an Opioid Epidemic in Whatcom County.**

19. Opioids include prescription pain relievers such as morphine, oxycodone (OxyContin),

    hydrocodone (Vicodin), and fentanyl, as well as illegal street drugs like heroin and fentanyl

    analogues.  Opioids are highly addictive. They bind to opiate receptors in the brain to reduce

    pain and produce euphoria.  Regular use often leads to increased tolerance and physical

    dependence that is very hard to overcome.

20. The rates of OUD and deaths from opioid overdose are on the rise nationally.  According to

    the Centers for Disease Control and Prevention, "the rate of deaths from drug overdoses has

    increased 137%" since 2000, "including a 200% increase in the rate of overdose deaths

    involving opioids (opioid pain relievers and heroin)."[3] Approximately 115 people die from

    opioid overdoses every day in the United States.[4]

21. Like the rest of the country, Washington State is in the midst of an opioid epidemic. As

    stated in an Executive Order from the Office of Governor Jay Inslee, "in 2015, each day an

    average of two Washingtonians died from opioid overdose, and heroin overdose deaths have

    more than doubled between 2010 and 2015. . . .  [T]he opioid epidemic continues to affect

---

[3] Rose A. Rudd et al., Centers for Disease Control and Prevention, *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, 64 Morbidity and Mortality Weekly Report 1378, 1378-82 (Jan. 1, 2016), *available at* https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm?s_cid=mm6450a3_w.
[4] Centers for Disease Control and Prevention, *Understanding the Epidemic*, CDC (Aug. 30, 2017), https://www.cdc.gov/drugoverdose/epidemic/index html.

Complaint - 5

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

communities, devastate families, and overwhelm law enforcement, health care, and social service providers."[5]

22. The situation in Whatcom County is dire. The County has seen large increases in opioid drug overdose deaths over the last fifteen years and had the second-highest opioid treatment admission rate in Washington State from 2011 to 2013.[6] Between 2012 and 2016, 69 people died from opioid related overdoses in Whatcom County, at least 18 of whom died in 2016 alone.[7]

23. In 2016, Whatcom County Jail recorded incarcerating at least 253 people who self-reported as abusing heroin and other opiates. *See* Exhibit I.

**B.     OUD is a Disability Covered by the ADA.**

24. People addicted to prescription or illicit opioids have an opioid use disorder (OUD), which is a specific type of substance use disorder. OUD is "the maladaptive use of opioids, prescribed or illicit, resulting in two or more criteria that reflect impaired health or function over a 12-month period. OUD is scaled according to severity (mild/moderate/severe) and does not require physiological tolerance or dependence in order to be considered a substance use disorder."[8] *See also* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 541 (5th ed. APA, 2013) (Opioid Use Disorder), attached as Exhibit A.

---

[5] Addressing the Opioid Use Public Health Crisis, State of Wash. Office of the Governor Exec. Order No. 16-09 (Oct. 7, 2016), *available at* http://www.governor.wa.gov/sites/default/files/exe_order/eo_16-09.pdf.
[6] University of Washington Alcohol and Drug Abuse Institute, Opioid Trends Across Washington State (2015), available at http://adai.uw.edu/pubs/infobriefs/ADAI-IB-2015-01.pdf.
[7] Wash. State Dep't of Health, DOH 346-083, *Opioid-Related Deaths in Washington State, 2006–2016* (2017), *available at* https://www.doh.wa.gov/Portals/1/Documents/Pubs/346-083-SummaryOpioidOverdoseData.pdf; Whatcom County Medical Examiner, *Annual Report* (2016), *available at* https://www.whatcomcounty.us/ArchiveCenter/ViewFile/Item/8323.
[8] Hilary Smith Connery, *Medication-Assisted Treatment of Opioid Use Disorder: Review of the Evidence and Future Directions*, 23 Harvard Review of Psychiatry 63, 63 (2015).

Complaint - 6

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

25. People who are physically dependent on opioids experience acute withdrawal effects when they stop taking opioids and can suffer from protracted withdrawal symptoms. The symptoms of acute withdrawal include increased pulse, vomiting, diarrhea, excessive sweating, bone and joint aches, anxiety, and irritability.[9] Protracted withdrawal symptoms can be much longer, lasting for weeks or months. These symptoms can include anxiety, depression, sleep disturbances, fatigue, dysphoria (i.e., feeling down or emotionally blunted), and irritability.[10]

26. Withdrawal alone is not a recognized form of treatment for OUD. Because OUD is often accompanied by changes to brain chemistry, there is a high likelihood of relapse after withdrawal if additional forms of treatment are not provided. Absent such treatment, people suffering from OUD will continue to crave opioids.

27. The ADA protects people from discrimination on the basis of their disabilities.

28. The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). People with OUD suffer from a physical or mental impairment that substantially limits one or more major life activities. 28 C.F.R. § 35.108(b)(2) (defining physical or mental impairment to include "drug addiction"). OUD substantially limits major life activities, including caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A). OUD also limits the

---

[9] Wesson, D. R., & Ling, W., *The Clinical Opiate Withdrawal Scale (COWS)*, 35 J. Psychoactive Drugs 253, 253–59 (2003), *available at* https://www.drugabuse.gov/sites/default/files/files/ClinicalOpiateWithdrawalScale.pdf (Appendix 1).
[10] SAMHSA, *Protracted Withdrawal*, 9 Substance Abuse Treatment Advisory 1, 1-8 (2010), *available at* https://roar nevadaprc.org/system/documents/3520/original/NPRC.1517.SATAProtractedWithdrawl.pdf?143776649 4.

Complaint - 7

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

operation of major bodily functions, such as neurological and brain functions. 42 U.S.C.
§ 12102(2)(B). The determination whether an impairment substantially limits a major life
activity is made without regard to the effect that ameliorating measures—including
medication—may have on the impairment. 42 U.S.C. § 12102(4)(E)(i). Accordingly, people
with OUD are individuals with a disability within the meaning of 42 U.S.C. § 12102 and 28
C.F.R. § 35.108, and are covered by the ADA's protections.

29. The ADA provides that health and drug rehabilitation services cannot be denied based on a
person having engaged in illegal drug use. 42 U.S.C. § 12210(c).

**C.      MAT Is a Clinically Proven and Life-Saving Treatment for OUD.**

30. MAT refers to the use of medications to treat OUD. These medications may include
methadone or buprenorphine (also known as Suboxone or Subutex).

31. Methadone and buprenorphine work by blocking or partially blocking the opioid receptors in
the brain. As part of a treatment regimen, methadone and buprenorphine normalize brain
chemistry, block the euphoric effects of opioids, relieve physiological cravings, and
normalize body functions—all without the negative effects of opioids.

32. For some people, MAT can be a short-term treatment; others may need to remain on MAT
for many years or even indefinitely to treat their OUD and prevent relapse, overdose, and
death.

33. People with OUD who are incarcerated are at heightened risk for relapse and overdose,
especially in the two-week period immediately after release because their physical tolerance
to opioids has decreased, yet the physical and psychological cravings still exist.

Complaint - 8

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

34. There is substantial evidence and overwhelming consensus in the medical community that MAT is an effective treatment option for OUD.  MAT is particularly effective at reducing the risk of overdose death, including for people leaving prison or jail.

35. In 2017, regarding the use of MAT in jails and prisons, the President's Commission on Combating Drug Addiction and the Opioid Crisis stated:

> In the weeks following release from jail or prison, individuals with or in recovery from OUD are at elevated risk of overdose and associated fatality. MAT has been found to be correlated with reduced risk of mortality in the weeks following release and in supporting other positive outcomes. A large study of individuals with OUD released from prison found that individuals receiving MAT were 75% less likely to die of any cause and 85% less likely to die of drug poisoning in the first month after release. Compared to approaches that do not include FDA-approved medications, MAT for OUD is associated with better treatment retention, reductions in the spread of infectious diseases, such as HCV and HIV, and lower rates of criminal behavior.

President's Commission on Combating Drug Addiction and the Opioid Crisis, *Final Report* 72 (2017) (internal footnotes omitted).[11]

36. The American Society of Addiction Medicine, the leading addiction medicine professional society in the country, has issued a National Practice Guideline for MAT recommending that people with OUD in the criminal justice system should be treated with MAT.[12]

---

[11] *Available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-1-2017.pdf.
[12] Kype Kampman & Margaret Jarvis, *American Society of Addiction Medicine (ASAM) National Practice Guideline for the Use of Medications in the Treatment of Addiction Involving Opioid Use*, 9 J. Addict. Med. 1, 8 (2015), *available at* https://www.asam.org/docs/default-source/practice-support/guidelines-and-consensus-docs/asam-national-practice-guideline-jam-article.pdf.

Complaint - 9

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

37. The National Commission on Correctional Health Care has also adopted a position statement calling for the "continuation of prescribed medications for substance use disorders," including buprenorphine.[13]

38.  The United States Department of Justice's Adult Drug Court Discretionary Grant Program requires grantees to permit the use of MAT.[14]

39. The MAT drug buprenorphine is just like any other prescription medication used to treat chronic illness that is routinely provided in jails and prisons, such as insulin to manage diabetes.

40. Keeping people with OUD on MAT until they are clinically ready for a tapered withdrawal reduces the risk of relapse, overdose, and death.

41. MAT not only saves lives, it also saves money. According to the Washington State Institute for Public Policy, MAT maintenance for OUD reduces crime and health care while increasing labor market earnings.  These net benefits are roughly $4,488 per methadone patient and $3,458 per buprenorphine patient.[15]

42. Policies that prevent access to MAT in the criminal justice system are counter to the standard of care for treating opioid addiction.

---

[13] National Commission on Correction Health Care, *Substance Use Disorder Treatment for Adults and Adolescents*, NCCHC (Oct. 23, 2016), https://www.ncchc.org/substance-use-disorder-treatment-for-adults-and-adolescents.
[14] U.S. Dep't of Justice, Adult Court Discretionary Grant Program FY 2018 Competitive Grant Announcement, OMB No. 1121-0329 (2018), available at https://www.bja.gov/funding/DrugCourts18.pdf.
[15] Wash. State Institute for Public Policy, *Methadone Maintenance for Opioid Use Disorder* (2018), *available at* http://www.wsipp.wa.gov/BenefitCost/ProgramPdf/694/Methadone-maintenance-for-opioid-use-disorder; Wash. State Institute for Public Policy, *Buprenorphine (or buprenorphine/naloxone) Maintenance Treatment for Opioid Use Disorder* (2018), *available at* http://www.wsipp.wa.gov/BenefitCost/ProgramPdf/695/Buprenorphine-or-buprenorphine-naloxone-maintenance-treatment-for-opioid-use-disorder.

Complaint - 10

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

43. Despite the efficacy of MAT to treat OUD and its nation-wide recognition as an effective standard of care, there is a significant stigma surrounding the use of these treatments in correctional facilities.

44. Many corrections officials incorrectly believe that MAT "replace[s] one addiction with another" and allows people who are incarcerated to get high.[16]

45. These beliefs are not accurate.  The National Institute on Drug Abuse clearly states that "[m]ethadone and buprenorphine DO NOT substitute one addiction for another."[17]

**D.    Defendants Have a Policy and Practice of Refusing to Provide MAT to Non-Pregnant People with OUD Despite Providing Other Medications, In Violation of the ADA.**

46. Defendants provide medical services to people incarcerated at the Whatcom County Jail, including providing medication services.

47. According to Jail policy, medication services must be "clinically appropriate and provided in a timely, safe, and sufficient manner."  *See* Exhibit B.

48. Pursuant to Jail policy, health staff arrange for the distribution of prescription medication after obtaining an order by the Jail's physician.  Health staff may also receive medication orders from outside providers and pharmacies, and patients may bring their own medications to the Jail.  There are procedures in place for the disbursement of medication and monitoring to prevent the diversion of medication.  *Id.*

49. The Jail stocks buprenorphine but only distributes it to pregnant women with OUD.

---

[16] *See* Timothy Williams, *Opioid Users are Filling Jails.  Why Don't Jails Treat Them?*, N.Y. TIMES (Aug. 4, 2017). https://www.nytimes.com/2017/08/04/us/heroin-addiction-jails-methadone-suboxone-treatment.html.
[17] National Institute on Drug Abuse, *Effective Treatments for Opioid Addiction*, DRUGABUSE.GOV (2016), *available at* https://www.drugabuse.gov/publications/effective-treatments-opioid-addiction/effective-treatments-opioid-addiction (emphasis in the original).

Complaint - 11

501531833 v2

50. According to the Whatcom County Jail Health Program "Subutex Protocal [sic]," pregnant individuals with OUD incarcerated at the Whatcom County Jail are eligible for MAT in the form of buprenorphine (Subutex) treatment upon confirmation of a positive pregnancy test and urine opiate screen.  Pregnant women are eligible for MAT whether they have been on MAT or on prescription or illegal opiates. This protocol details instructions for care, dosing, and frequency of withdrawal assessments, and also requires "[c]lose watch for diversion." The Protocol further notes that buprenorphine can be administered in crushed form, ostensibly to prevent misuse. The Jail also has a discharge planning protocol for MAT for pregnant women, including providing a written prescription upon discharge and referrals to community resources.  *See* Exhibit C.

51. Defendants' Subutex protocol for pregnant women indicates that Defendants understand that MAT is a safe, effective treatment for OUD.  It also indicates that Defendants have the means and resources, including trained staff and internal protocols, to provide Subutex to anyone with OUD.

52. The Jail does not have a written MAT protocol for non-pregnant people with opioid use disorders.  Instead, Whatcom County's policy and practice is to deny MAT to all Plaintiffs and similarly situated individuals.

53. When people with OUD – other than pregnant women – who are on MAT or opioids, are admitted to Whatcom County Jail, they are forced to suspend their MAT or opioid use.

54. The abrupt cessation of the use of MAT or opioids frequently forces these people into acute withdrawal, subjecting them to suffering, including vomiting, diarrhea, excessive sweating,

Complaint - 12

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

increased pulse, bone and joint aches, anxiety, and irritability over several days or even weeks when first admitted to the Whatcom County Jail.

55. Forced withdrawal is not a best practice for people already on MAT, because it disrupts that person's treatment plan and increases the risk of relapse and deadly overdose.  The standard of care is to continue MAT services.  It is also the standard of care to provide people with OUD access to treatment, including MAT, as needed.

56. According to Defendants' written policies, people in the throes of acute withdrawal may be provided only Phenergan, an antihistamine used to treat nausea and vomiting; Imodium, an anti-diarrheal; and Tylenol.  *See* Exhibit D.

57. These "comfort" medications may provide some minor relief for the physical symptoms of withdrawal but do not treat the underlying disability, OUD, in the way that providing MAT would.

58. The Defendants deny many inmates in withdrawal even "comfort" medications.  These inmates are instead left alone in an isolation cell with a jug of water or juice during the period of acute withdrawal.  These inmates experience extreme vomiting and diarrhea, leading to serious dehydration, weight loss, and muscle weakness; they can sometimes can only lie by the toilet until the acute symptoms pass.

59. The Defendants' policy and practice of denying Plaintiffs and putative class members MAT is discrimination on the basis of disability prohibited by the ADA.

**E. Plaintiffs Suffer Serious Irreparable Harm as a Result of Defendants' Policy and Practice of Denying Access to MAT.**

60. Plaintiffs and members of the class they seek to represent face significant risks to their health and long-term well-being at the Whatcom County Jail and upon release due to Defendants'

Complaint - 13

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

policies and practices. Although they suffer from OUD and are entitled to treatment for their disability, Defendants deny Plaintiffs and putative class members effective treatment for OUD.

61. Plaintiffs and putative class members also face the physical and emotional toll of undergoing forced withdrawal in the Jail. Denial of MAT delays or derails people's treatment for OUD, putting them back at square one and increasing their risk of relapse.  When people suffering from OUD are released from jail, there is no guarantee they will be able to restart their MAT treatment.  The delay in receiving treatment can lead individuals to seek out illicit opioids as a stopgap for their cravings and withdrawal.  In these ways, Defendants' denial of MAT puts people suffering from OUD on a trajectory for relapse.  And because forced withdrawal leads to decreased opioid tolerance, individuals denied MAT while incarcerated face an increased likelihood that they will overdose and potentially die upon release.

62. Forced withdrawal has other collateral consequences, including impacting Plaintiffs' ability to participate in their criminal cases. It is common in Whatcom County for inmates to miss a first appearance in court due to the withdrawal symptoms. Missing a first appearance can impact whether inmates are released as well as the conditions of release.

**a. Plaintiff Sy Eubanks**

63.  Plaintiff Sy Eubanks is a 46-year old man diagnosed with OUD.  When he was 18 years old, he was prescribed opioid painkillers after undergoing knee surgery to correct a high school wrestling injury.  He quickly became addicted. By his mid-twenties, Mr. Eubanks was also using heroin.

Complaint - 14

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

64. After high school, Mr. Eubanks held a job as a logger, but his opioid addiction negatively impacted his work.  He first realized he was addicted to opioids when he started getting sick from withdrawal, which caused him to miss work. To avoid going into withdrawal and getting sick, Mr. Eubanks resorted to extraordinary measures to support his opioid addiction: shoplifting, stealing, and pawning items to get money or drugs.

65. Mr. Eubanks has experienced withdrawal in the Whatcom County Jail numerous times.

66. About fifteen years ago, Mr. Eubanks was tired of being sick all the time from his opioid addiction and sought help.  He went to Island Crossing Counseling Services in Arlington, Washington, where he received methadone.  As a result of the methadone, Mr. Eubanks was able to stay off opioids and he no longer experienced the physical pain from withdrawal.

67. Though he has had occasional relapses, which is a common occurrence for someone with OUD, Mr. Eubanks has continually returned to MAT treatment (Suboxone or methadone). He wants to continue on MAT.

68. Most recently, about a year and a half ago Mr. Eubanks was prescribed Suboxone at Sea Mar Community Health Center.

69.  Mr. Eubanks was booked into Whatcom County Jail on September 14, 2017.  Mr. Eubanks does not remember whether he informed staff about his Suboxone prescription.  However, he was well aware of Whatcom County Jail's policy, and knew that even if he informed staff of his prescription, he would not be given Suboxone.

70. Mr. Eubanks remembers little about his most recent detox experience, but in the past his acute withdrawal symptoms—vomiting, diarrhea, lack of appetite, chills, and body aches— have lasted about a month.  Mr. Eubanks is currently very irritable, anxious, and depressed

Complaint - 15

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

now that he is off Suboxone.  He also now has intense cravings for opioids, which feel like his blood is on fire—cravings he did not have while on Suboxone.

71. The Whatcom County Jail's policy of refusing to offer MAT has derailed Mr. Eubanks' recovery.  In the past, the lack of MAT treatment at the Whatcom County Jail has made it harder for him to resume his MAT treatment upon release and caused him to go back on heroin instead. The knowledge of how easy it is to relapse to opioids upon release has plagued Mr. Eubanks since he was forced to stop MAT.

72. In late May 2018, Mr. Eubanks filed a grievance with Whatcom County Jail challenging Whatcom County Jail's policy and practice of refusing to provide MAT to non-pregnant people with OUD.  On or about May 28, 2018, jail staff replied to Mr. Eubanks' grievance and said that the Jail may provide MAT in the future, but only for "detox" purposes. Mr. Eubanks filed an appeal on or about May 30, 2018.

73. Upon release from Whatcom County Jail, Mr. Eubanks wants to resume his MAT treatment to stay off opioids, and visit his family in Acme, Washington.

**b. Plaintiff Gabriel Kortlever**

74. Plaintiff Gabriel Kortlever is a 24-year old man with OUD.  Mr. Kortlever first used heroin when he was 16 years old, and it helped him to escape reality. At first, he only used it on the weekends, but within one month, he was addicted and using it daily.

75. Mr. Kortlever dropped out of high school his senior year because of his heroin addiction.  He held a job as a maintenance worker at a plant nursery for over a year but lost the job, also due to his heroin addiction.

Complaint - 16

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

76. Mr. Kortlever's heroin use led him to engage in criminal activity to support his drug habit. His heroin addiction caused him to become dangerously indifferent about the consequences of his actions.

77. When Mr. Kortlever was released from DOC custody on August 28, 2017, he wanted to change his life. But by mid-October 2017, he began using heroin again and fell back into the negative cycle of criminal activity to support his drug habit.

78. In mid-March 2018, Mr. Kortlever was ready to get clean. With the support of his mother and community corrections officer, he met with a doctor at Cascade Medical Advantage who prescribed Suboxone. He was surprised at how effectively the Suboxone eliminated his opioid cravings. With the help of Suboxone, he stopped using heroin and has not used it since. Mr. Kortlever is confident that he would stay off heroin if on Suboxone.

79. On April 20, 2018, Mr. Kortlever was booked at the Whatcom County Jail. Upon arrival, Mr. Kortlever informed staff that he was on Suboxone, but was told that Suboxone was not allowed per Jail policy.

80. A few days after booking, Mr. Kortlever was offered comfort medications, such as anti-diarrhea and anti-nausea medications, for MAT withdrawal symptoms.

81. Mr. Kortlever experienced withdrawal in general population. Mr. Kortlever experienced acute withdrawal symptoms—fatigue, lack of appetite, restless legs, vomiting, hot and cold flashes, extreme anxiety, and depression—for two weeks. While the most extreme withdrawal symptoms subsided after the first two weeks, Mr. Kortlever continues to experience withdrawal symptoms such as trouble sleeping, fatigue, anxiety, and depression. For Mr. Kortlever, withdrawing from Suboxone was worse than withdrawing from heroin.

Complaint - 17

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

82. Mr. Kortlever has experienced intense cravings for opioids since Defendants denied him Suboxone.

83. Mr. Kortlever feels that Whatcom County Jail's policy and practice of refusing to provide MAT to non-pregnant people has derailed his recovery.  He is deeply afraid that when he is released his doctor will not prescribe him Suboxone again because his treatment was interrupted, and that he will go back to heroin.  This fear causes Mr. Kortlever to suffer from anxiety and depression.

84. On June 1, 2018, Mr. Kortlever filed a grievance with Whatcom County Jail protesting their policy and practice of refusing to provide MAT to non-pregnant people with OUD.

85. Once he is released, Mr. Kortlever wants to resume his MAT treatment to stay off opioids, and go back to school to become a diesel mechanic.

**c. Whatcom Has Refused to Change Its Policy of Denying MAT to People with OUD.**

86. In an effort to negotiate a change to Defendants' policy and practice, Plaintiffs' counsel sent Defendants' counsel a letter on August 22, 2017, outlining concerns about the Whatcom County Jail's MAT policies and practices and Defendants' violations of the ADA. A true and correct copy of that letter is attached as Exhibit E.  Defendants' counsel acknowledged receipt of the letter via email on August 23, 2017.  A true and correct copy of that email is attached as Exhibit F.  Plaintiffs had additional communications with Defendants' counsel in October and November 2017 and provided additional materials to Defendants' counsel concerning MAT. True and correct copies of this correspondence are attached as Exhibits G and H. Defendants never responded to the substantive points raised by the letter and have not

Complaint - 18

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

made any changes to their policy or practice of denying MAT to inmates in the Whatcom County Jail.

## CLASS ACTION ALLEGATIONS

### Class Definition

87. All Plaintiffs bring this action on their own behalf and, pursuant to Fed. R. Civ. P. 23(a), (b)(2), on behalf of a class of non-pregnant people who have an OUD and who are incarcerated, or who will be incarcerated in the future, at the Whatcom County Jail in Bellingham, Washington.

### Numerosity: Fed. R. Civ. P. 23(a)(1)

88. The proposed class is sufficiently numerous that joinder of all members of the class is impracticable. Pursuant to Whatcom County Jail records, the County incarcerated at least 253 individuals in 2016 who self-reported as abusing heroin and other opiates. The exact size of the class is unknown, but is estimated to number in the hundreds every year.

### Commonality: Fed. R. Civ. P. 23(a)(2)

89. There are questions of law and fact common to the class, including, but not limited to, whether Defendants' failure to provide MAT to individuals with OUD incarcerated at the Whatcom County Jail violates Title II of the ADA.

### Typicality: Fed. R. Civ. P. 23(a)(3)

90. The claims of the named Plaintiffs are typical of the claims of the members of the proposed class. Plaintiffs and all other members of the class will sustain similar injuries arising out of and caused by Defendants' policies and practices in violation of the law as alleged.

Complaint - 19

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

<u>Adequacy: Fed. R. Civ. P. 23(a)(4)</u>

91. Plaintiffs are members of the class and will fairly and adequately represent and protect the
interests of the putative class members.  Plaintiffs' counsel are experienced in class action
litigation, and will fairly and adequately protect the interests of the class.

<u>Fed. R. Civ. P. 23(b)(2)</u>

92. Because Defendants have acted and refused to act on grounds that apply generally to the
class, final injunctive relief and corresponding declaratory relief is appropriate respecting the
class as a whole.

**CLAIM FOR RELIEF**

**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12132**

93. Plaintiffs re-allege and incorporate by reference herein all allegations previously made in
paragraphs 1 through 92 above.

94. Under the ADA, "no qualified individual with a disability shall, by reason of such disability,
be excluded from participation in or be denied the benefits of the services, programs, or
activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.
§ 12132.

95. All Plaintiffs and the class they represent are qualified individuals with disabilities as that
term is defined in 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104.

96. All Plaintiffs and the class they represent have a disability, as that term is defined in 42
U.S.C. § 12102 and 28 C.F.R. § 35.108. They all suffer from OUD, which is a mental and/or
physical impairment that substantially limits one or more "major life activities," including,
*inter alia*, caring for themselves, eating, sleeping, learning, concentrating, thinking,

Complaint - 20

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

501531833 v2

communicating, working, and the operation of their major bodily functions, including

immune systems and digestive, bowel, bladder, neurological, brain, and circulatory functions.

*See* 42 U.S.C. §§ 12102(1)–(2).

97. Defendants are public entities as that term is defined in 42 U.S.C. § 12131(1) and 28 C.F.R.

§ 35.104.

98. Defendants provide medical services to individuals incarcerated at the Whatcom County Jail

including, *inter alia*, medication services.  *See Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206,

210 (1998) (concluding that "services, programs, or activities" under the ADA include

medical services).

99. All Plaintiffs and the class they represent meet the essential eligibility requirements for the

receipt of medical services— including access to medications—provided by Defendants to

individuals incarcerated at the Whatcom County Jail.

100.     Even though Plaintiffs and the class they represent are qualified individuals, Defendants

deny MAT to Plaintiffs and the class they represent on the basis of their disability: OUD.

*See*  42 U.S.C. § 12210(c) ("…an individual shall not be denied health services, or services

provided in connection with drug rehabilitation, on the basis of the current illegal use of

drugs if the individual is otherwise entitled to such services.").  Defendants provide

medication services to individuals as necessary for other diseases and disorders, but have a

policy and practice of denying MAT to non-pregnant individuals with opioid use disorder.

This is a violation of the ADA.

Complaint - 21

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

1    101.    As a direct and proximate result of Defendants' unlawful discrimination in violation of

2        the ADA, Plaintiffs and the class they represent have been harmed and face imminent injury

3        and bodily harm.

4                                    **REQUEST FOR RELIEF**

5    WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

6        1.    a declaration that Defendants' acts, omissions, polices, practices, and procedures

7              as described in this Complaint violate Title II of the Americans with Disabilities

8              Act;

9        2.    preliminary and permanent injunctions requiring Defendants to provide access to

10             necessary medications for the treatment of opioid use disorder in compliance with

11             Title II of the Americans with Disabilities Act;

12       3.    an award of Plaintiffs' costs and attorneys' fees;

13       4.    leave to amend these pleadings to conform to the evidence as presented at trial;

14             and

15       5.    such other and further relief as the Court may deem just and proper.

16            DATED this 6th day of June 2018

17

18                                         Respectfully submitted,

19                                         By:

20                                         /s/Lisa Nowlin
                                           Lisa Nowlin, WSBA No. 51512
21                                         lnowlin@aclu-wa.org
                                           /s/Jessica Wolfe
22                                         Jessica Wolfe, WSBA No. 52068

23

Complaint - 22                             AMERICAN CIVIL LIBERTIES UNION OF
                                           WASHINGTON FOUNDATION
                                           901 FIFTH AVENUE #630
                                           SEATTLE, WA 98164
                                           (206) 624-2184

jwolfe@aclu-wa.org
/s/John Midgley_____
John Midgley, WSBA No. 6511
jmidgley@aclu-wa.org
/s/Mark Cooke_____
Mark Cooke, WSBA No. 40155
mcooke@aclu-wa.org
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184

*Attorneys for* Plaintiffs

Complaint - 23

501531833 v2