# Exhibit 1

## (Lisa Nowlin's Declaration)

## 1.      SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made by and among Defendants Whatcom County, Washington and Whatcom County Sheriff's Office ("Defendants") and Plaintiffs Gabriel Kortlever and Sy Eubanks ("Plaintiffs") on behalf of the individual Plaintiffs and the proposed class identified below. The Defendants and Plaintiffs are each a "Party" and collectively the "Parties" to this Settlement Agreement. The Parties agree as follows.

## 2.      RECITALS

2.1      The United States, Washington State, and Whatcom County (the "County") are all dealing with a deadly opioid epidemic. In 2016, there were 42,249 opioid overdose deaths in the United States, 709 of which were in Washington. Opioids include prescription pain relievers such as morphine, oxycodone (OxyContin), hydrocodone (Vicodin), and fentanyl, as well as illegal street drugs like heroin and fentanyl analogues. Opioids are highly addictive. People addicted to prescription or illicit opioids may have an opioid use disorder (OUD), which is a specific type of substance use disorder listed in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders.

2.2      OUD is a disability under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12102; 28 C.F.R. § 35.108(b)(2). Accordingly, people with OUD are covered by the ADA's protections against discrimination on the basis of their disability. Further, the ADA provides that health and drug rehabilitation services cannot be denied based on a person having engaged in illegal drug use. 42 U.S.C. § 12210(c).

2.3      Medication Assisted Treatment (MAT) refers to the use of medication to treat OUD. These medications may include methadone, buprenorphine, and naltrexone products.[1] There is substantial evidence that MAT is one of the effective treatment options for OUD. In recent years, the medical community has come to the consensus that MAT is an effective treatment option for OUD.

2.4      On June 6, 2018, Plaintiffs filed a proposed class action lawsuit against Whatcom County and the Whatcom County Sheriff's Office in the United States District Court for the Western District of Washington (the "District Court") entitled *Kortlever v. Whatcom County*, Case No. 18-00823 ("Action"). Plaintiffs allege a claim under the Americans with Disabilities Act, 42 U.S.C. 12132. Plaintiffs' claim arises out of the County's alleged policy and practice of not providing MAT treatment to all OUD inmates.

---

[1] The full list of FDA-approved MAT medications is available at
https://www.fda.gov/Drugs/DrugSafety/InformationbyDrugClass/ucm600092.htm.

**2.5**     The Parties seek to avoid the expense of further litigation and to settle the Action for the consideration set forth herein, the sufficiency of which is hereby acknowledged. Without admitting fault or liability, the Parties agree to settle the claims in the Action.

**2.6**     This Settlement Agreement shall not be construed as an admission by any party, person, or entity regarding liability or violation of any law by defendants or any other person or entity, and this Settlement Agreement may not be used as evidence in any proceeding other than for the sole and limited purpose of enforcing this Settlement Agreement. The Parties enter into this Settlement Agreement for purposes of settling the disputed contentions and controversies arising from this action. The Parties stipulate, based upon the entire record, that the relief set forth in this agreement is narrowly drawn, extends no further than necessary to correct alleged violations of federal rights, and is the least intrusive means necessary to correct alleged violations of federal rights.

**3.     DEFINITIONS**

**3.1     Defendants**: Defendants are defined as Whatcom County, Washington, and the Whatcom County Sheriff's Office.

**3.2     Whatcom County Jail**: References to the "Whatcom County Jail" or "the Jail" include the Whatcom County Jail, the Interim Work Center, and any other facilities operated by Whatcom County and/or the Whatcom County Sheriff's Office where individuals are incarcerated.

**3.3     Plaintiffs**: Plaintiffs are defined as Gabriel Kortlever and Sy Eubanks.

**3.4     Plaintiff Class**: The putative class of plaintiffs is defined as the class of non-pregnant people who have an OUD and who are incarcerated, or who will be incarcerated in the future, at the Whatcom County Jail in Bellingham, Washington.

**3.5     Effective Date**: The effective date of this Settlement Agreement, as referred to below, shall be the date on which the District Court enters an order of final approval of the settlement under Fed. R. Civ. P. 23(e).

**3.6     Policy**: Statements that establish definitive parameters for program operations; a system of principles to guide decisions and achieve outcomes.

**3.7     Protocol:** The specific medical methods to express policies in actions in the day to day operations of the jail. The protocols enacted by the jail are only subject to this agreement in so far as they comport with the policies that are attached to this agreement.

**4.     CONDITIONAL AGREEMENT**

**4.1**     The Parties will seek final approval from the District Court of the Parties' settlement by entry of a Settlement Order that incorporates this Settlement Agreement, future

modifications to this Settlement Agreement or other future agreement, and other associated orders including the certification of the Plaintiff Class. It is understood and agreed by the Parties that if the District Court fails or refuses to approve the Proposed Settlement Order or certify the class, this Settlement Agreement and the Proposed Settlement Order shall become null and void and without any force or effect, and none of the Parties shall be bound by it.

**4.2     Class Certification.**   Solely for purposes of this Agreement, the Parties stipulate and agree to the certification of a Class Action covering the Plaintiff Class. Should the settlement not become final for any reason, the Parties will be returned to their pre-certification status prior to this Agreement. The fact that the Parties were willing to stipulate to class certification as part of this Agreement will have no bearing on, and will not be admissible in connection with, the issue of whether a class or classes should be certified in a non-settlement context in this lawsuit or in any other action. Defendants expressly reserve their right to contest class certification and the merits of this or any other lawsuit should this settlement not become final.

**4.3     Procedures for Approval.**   As part of this Agreement, the Parties agree to the following procedures for obtaining preliminary court approval of this Agreement, notifying members of the Plaintiff Class, submitting objections to the final settlement, and obtaining final court approval of the Final Judgment:

a.     Request for Preliminary Approval.  The Parties will cooperate fully to promptly request a hearing before the federal district court (the "Preliminary Settlement Hearing") to obtain an order (the "Preliminary Order") preliminarily approving this Agreement, authorizing the Parties to provide notice of the settlement to class members, and setting a date for a final settlement approval hearing (the "Final Settlement Approval Hearing") at which the Court will determine whether to grant final approval of this Agreement.  Plaintiffs will take the lead in drafting necessary pleadings, but both Parties will cooperate in this process in good faith and counsel will be responsible for assuring the pleadings fully reflect their clients' respective interests.  The Parties' initial submission to the Court will request that the Court enter a Preliminary Order certifying the Plaintiff Class for settlement purposes only; appointing the Named Plaintiffs as class representatives and Plaintiffs' counsel as class counsel; providing preliminary approval of the settlement as fair, reasonable, and adequate; and approving the proposed settlement notice ("Notice") and any other documents necessary to implement the Agreement.

b.     Notice to Class Members.  Within fifteen (15) calendar days of the Preliminary Order, Plaintiffs will send a Notice to all Class members via the means described in Plaintiff's motion for preliminary settlement approval. The Notice will describe the nature and status of the Class Action; the positions of the Parties; the substance of the Agreement; the relief provided under the Agreement; the proposed dismissal of the Class Action; the procedures for objecting to the Agreement; the date, time, and location of, and procedure for participating in, the Final

Settlement Approval Hearing; and the method for submitting inquiries concerning this Agreement or related matters.

c.      Procedure for Objecting to Settlement. Class members who wish to object to any aspect of the Agreement must file with the Court and serve on counsel for all Parties a written statement containing their objection within forty-five (45) calendar days of the Preliminary Order (the "Objection Deadline"). No Class member will be entitled to be heard at the Final Settlement Approval Hearing (whether individually or through separate counsel) or to object to the Agreement, and no written objections or briefs submitted by any Class member will be received or considered by the Court, unless written notice of the Class member's intention to appear at the Final Settlement Approval Hearing, together with copies of all written objections and briefs, are filed with the Court and served on counsel for the Parties on or before the Objection Deadline. Class members who fail to file and serve timely written objections in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement. Counsel for the Parties may file responses to any objections, which must be filed with the Court and served on the objecting Plaintiffs and other Parties no later than ten (10) calendar days before the Final Settlement Approval Hearing.

d.      Final Settlement Approval Hearing and Entry of Final Judgment. The Parties agree that promptly after the close of any objection period, they will file a motion for final approval of the settlement together with a proposed Final Judgment and Order of dismissal with prejudice.  A Final Settlement Approval Hearing will be conducted to determine whether the Court should grant final approval of the Agreement. At that hearing, the Parties will present the Final Judgment to the Court for its approval and entry. As part of the Final Judgment, the parties will move the Court for dismissal of the Class Action with prejudice as to the Named Plaintiffs and the Class. As discussed in Section 8.1, after entry of the Final Judgment, the Court will have continuing jurisdiction over the Class Action, including to enforce the terms of this Settlement Agreement and to oversee all matters that relate to the performance of this Settlement Agreement.

e.      Nullification of Settlement.  In the event (i) the Court does not enter the Preliminary Order as provided above, (ii) the Court does not finally approve the Agreement as provided above, or (iii) the settlement does not become final for any other reason, this Agreement will be null and void.  In such a case, the Parties will be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties will proceed in all respects as if this Agreement had not been executed.

5.      **MAT POLICIES**

**5.1**      Whatcom County Jail shall implement written policies that implement Medically Assisted Withdrawal (MAW)for opioid withdrawal, maintenance of community based MAT treatment, and induction of MAT for persons diagnosed with OUD and not currently on MAT. The MAT policies shall be patient-focused, follow accepted standards of medical care in corrections facilities and be supervised and reviewed by qualified medical professionals who have experience in providing health care to offender populations.

**5.2**      **Medically Assisted Withdrawal:**

**5.2.a**      The Whatcom County Jail must offer MAW to clinically appropriate inmates who are in withdrawal from opioids as medically indicated by the "Opioid Withdrawal Policy, Non-pregnant females and males" (tapering). See Exhibit A, attached and incorporated herein. The taper must be optional for the inmate provided they fit the clinical parameters for participation, and not at the expense of their ability to participate in MAT maintenance or induction.

**5.2.b**      Defendants have implemented "Opioid Withdrawal Policy, Non-pregnant females and males" (tapering), which governs the provision of MAW to appropriate individuals in opiate withdrawal who choose to participate in the program. See Exhibit A, attached and incorporated herein.

**5.3**      **MAT Maintenance:**

**5.3.a**      Non-methadone MAT: The Whatcom County Jail shall allow inmates with existing MAT prescriptions for OUD, such as Suboxone, Subutex, or Vivitrol, etc., to continue on their prescription MAT as long as clinically indicated. If clinically indicated the Whatcom County Jail may transition patients from their existing prescriptions to Suboxone or Subutex.

**5.3.b**      Methadone MAT: The Whatcom County Jail shall allow inmates who are on methadone for OUD treatment at the time of booking to transition from methadone to prescriptions such as Suboxone, Subutex or Vivitrol, and to continue as long as clinically indicated. If the offender is reasonably expected to be transferred or otherwise released from custody within 24 to 36 hours, the offender will receive supportive care until such time as they are released from custody, so they may continue their methadone treatment upon release. If the offender does not wish to transition from methadone to Suboxone, Subutex or Vivitrol, the Whatcom County Jail will make reasonable attempts for alternative arrangements to keep the offender on methadone. Alternative arrangements could include: transferring the offender to the Skagit County Jail upon approval of the offender and Skagit County; communication with prosecution and defense attorneys about the possibility of seeking in court a less restrictive alternative placement outside of the jail, or any other means for keeping the offender on

methadone that is approved by the jail.   If alternative arrangements cannot be made, clinically appropriate offenders will be offered the option of participating in MAT tapering.

**5.3.c**     The Defendants have implemented MAT Maintenance Policies and Protocols, which govern the provision of MAT to appropriate individuals with opioid use disorder who choose to continue receiving MAT treatment consistent with treatment they receive from community medical providers. See "Medication-Assisted Treatment For Opioid Use Disorder Maintenance Policy, Non-Pregnant Females And Males" Exhibit B, attached and incorporated herein.   As the program moves forward, the Jail Health Program (JHP) may revise the policy in order to better meet the health care needs of the offenders, provided the revision comply with Section 5.10 of this agreement.

**5.4**     **MAT Induction:**

**5.4a**.   The Whatcom County Jail shall provide MAT services to medically appropriate inmates with OUD, regardless of whether they were already taking MAT at their time of entry to the Whatcom County Jail. MAT services shall include Suboxone, Subutex and Vivitrol as options.

**5.4.b**     Defendants have drafted the "Medication-Assisted Treatment For Opioid Use Disorder Induction Policy" attached hereto as Exhibit C and incorporated herein. Within one hundred and twenty (120) days of the Effective Date of this Settlement Agreement, Defendants shall adopt and implement "Medication-Assisted Treatment For Opioid Use Disorder Induction Policy." Any unresolved disagreement regarding the adoption or implementation of "Medication-Assisted Treatment For Opioid Use Disorder Induction Policy," compliance with this Settlement Agreement, or compliance with the ADA shall be subject to the dispute resolution process set out in Section 8 below. Copies of all protocols that relate to the implementation of "Medication-Assisted Treatment For Opioid Use Disorder Induction Policy" will be provided to counsel for Plaintiffs prior to the adoption and implementation of the Policy.

**5.5**     The Whatcom County Jail shall extend the current practice of community transition planning for all participants in the MAT programs, to the same extent and manner as provided for other inmates with Behavioral or Medical Health issues, so that the person may have the option to continue MAT treatment when leaving the jail. Nothing in this settlement commits the Whatcom County Jail to payment of community services provided outside of the physical boundaries of the Downtown Jail or the Work Center.

**5.6**     The Whatcom County Jail shall retain sufficient medical personnel with MAT prescribing capacity to meet the MAT needs of the jail's population.

**5.7**     Inmates receiving MAT shall not be segregated from the general population based solely on their participation in MAT treatment.

**5.8** Inmates shall have access to behavioral health services for OUD treatment, such as counseling, to the same extent as is provided to any other offender with a Behavioral Health Diagnosis, but such services or counseling will not be required for inmates to receive MAT tapering or maintenance. Inmates may be required to participate in behavioral health services prior to induction.

**5.9** Information about the MAT program will be provided to the offender population. This shall include the following:, informing the inmate during health screenings, posting signage within the housing units, posting signage within the booking area, and posting signage within the clinic area. The Whatcom County Jail and Interim Work Center Inmate Orientation Booklet shall provide information about the MAT program to the offender population. The Whatcom County jail will also share information about the MAT program with the Whatcom County Criminal Justice System to include, but not be limited to; the Public Defender's Office, the Prosecutor's office, the Courts and Whatcom County Probation. Information may also be provided to the Executive and Legislative Branches of Whatcom County Government. All information will be provided in such a way as to maintain the privacy of individual inmates.

**5.10** Any revisions to Whatcom County Jail policies relating to MAT will be provided to Plaintiffs' Counsel no fewer than twenty-one (21) days prior to their adoption. Within ten (10) days of receipt of draft policies, Plaintiffs' counsel may provide Defendants with written comments regarding proposed policies. Defendants will give reasonable consideration to such comments and respond to the same in writing. To ensure that the policies are being adhered to, any revisions to the Jail's protocols shall be provided to Plaintiffs' Counsel no later than fourteen (14) days after their implementation. Any continuing disagreement regarding the policies, the implementation of the policies via the protocols, compliance with this Settlement Agreement or the ADA shall be subject to the dispute resolution process set out in Section 8 below. The County reserves the right to immediately institute emergency changes (as determined by medical personnel) to the policies in the case of some as yet unknown medical issue. In cases of such an emergency, the changes and reasons behind the changes will be forwarded to Plaintiffs' Counsel within forty-eight (48) hours (excluding weekends and holidays). Plaintiffs' Counsel may provide written comments/response within ten (10) business days. Any unresolved disagreement regarding whether emergency changes comply with this Settlement Agreement or the ADA shall be subject to the dispute resolution process set out in Section 8 below.

**5.11** Nothing in this Settlement Agreement precludes the medical staff at the Whatcom County Jail from relying on medical judgment for each inmate's individual needs.

**6.      TRAINING AND IMPLEMENTATION**

**6.1      Training.** Defendants shall, within ninety (90) days of the Effective Date, provide training to all Corrections Deputies and medical staff on the MAT taper and maintenance

practices, at a level appropriate to their job assignment. Defendants shall provide training to all Corrections Deputies and medical staff on the induction practices at a level appropriate to their job assignment within ninety (90) days of implementation of the practices.  Training will be tailored to the needs of the varying departments within the Jail. Thereafter, regular in-service training will include any substantive changes to MAT policies or protocols. MAT training will also be included in the orientation training provided for new hires by JHP medical staff.  All MAT training will be appropriate for the job assignment.  Records of MAT training for Corrections Deputies are retained by the Whatcom County Sheriff's Office Corrections Bureau. Training of members of the JHP will be done by medical professionals as the level of training will be more in-depth.  Training records of the JHP team are retained by the agencies that provide medical and behavioral health services to the Jail. Training records for Corrections staff and JHP staff are reviewed every three (3) years as part of the Jail's accreditation process for the NCCHC (National Commission on Correctional Health Care).

> **6.2    Financial Resources.** Defendants shall provide the financial resources needed to implement the MAT policies and protocols and provide MAT to medically appropriate inmates on a long-term basis.

> **6.4.    Data Collection.** The Defendants will continue the data collection program already in place.  The data collected shall include: (1) number of people with a verified diagnosis of OUD, or who self-identified as using opioids, who were admitted to the Whatcom County Jail; (2) number of people who received MAT taper for OUD, and what type of MAT they received; (3) the number of people who were on MAT when admitted to the Whatcom County Jail who continued receiving MAT while in the Jail, and what type of MAT they received; (4) the number of people who were induced onto MAT, and what type of MAT they received; and (5) the number of people who had a release plan in place to continue MAT treatment at the time of their scheduled release or transfer.  Data will be collected at least every ninety (90) days for a period of not less than twenty-four (24) months. The aggregated data shall be provided to Plaintiffs through Plaintiffs' counsel. Since the data is the work product of the Whatcom County Sheriff's Office, Corrections Bureau, Plaintiffs' counsel may respond to any requests for copies of the data made to them by referring them to the Chief of Corrections, Whatcom County Sheriff's office. The request will take the form of a Public Records Request and will be confined to aggregated data only.

## 7.    PAYMENTS, ATTORNEYS' FEES AND COSTS

> **7.1**    In connection with this Settlement Agreement, the County shall pay Plaintiffs' counsel the amount of $25,000 in settlement of all claims for attorneys' fees and costs to the Effective Date of this Agreement. The terms of this Agreement will govern attorneys' fees and costs from the Effective Date of the Agreement forward.

7.2     Defendants agree to pay to Plaintiffs Gabriel Kortlever and Sy Eubanks, and Plaintiffs Gabriel Kortlever and Sy Eubanks agree to accept, $2,000 total (the "Settlement Funds"). The Settlement Funds are incentive payments to compensate Plaintiffs Gabriel Kortlever and Sy Eubanks for the additional cost and burden of participating in this action as a class representative. The Settlement Funds shall be divided equally among the Plaintiffs, with Gabriel Kortlever and Sy Eubanks to each receive $1,000. The County shall pay the Settlement Funds to the Trust Account of K&L Gates LLP within ten (10) days of the Effective Date of this Agreement. Plaintiffs' counsel shall disburse the Settlement Funds to Plaintiffs Gabriel Kortlever and Sy Eubanks via direct deposit or check within ten (10) days of Plaintiff requesting disbursement of the Settlement Funds, but no later than ninety (90) days after receiving the funds.

## 8.     TERM, EFFECT AND ENFORCEMENT

8.1     Unless otherwise stated, the County and the Sheriff shall comply with the terms of this Settlement Agreement for twenty-four (24) months following the Effective Date. The Action shall be considered closed on the Effective Date. However, for a period of twenty-four months following the Effective Date, the District Court (with its approval) shall retain jurisdiction over the Action to enforce the terms of this Settlement Agreement and to oversee any unresolved matters that may arise related to the performance of this Settlement Agreement. If there is an ongoing dispute as to the Defendants' compliance with this Settlement Agreement at the end of the twenty-four month jurisdictional period, the District Court's jurisdiction shall not terminate until the compliance issues are resolved by the Parties or the District Court, per the dispute resolution procedures contained herein, provided that the Plaintiffs deliver the written notice described below in Section 8.2 prior to the District Court's jurisdictional termination date set out in this Settlement Agreement or any later date that the District Court may set.

8.2     If Plaintiffs believe the Defendants are not in substantial compliance with any Settlement term, Plaintiffs may follow the procedure outlined in this section and Section 8.3. Plaintiffs shall first (1) notify the Defendants in writing of any allegation of violations of this Settlement Agreement; and (2) provide the Defendants with thirty (30) days to cure such violations. Defendants shall, within fourteen (14) days of receipt of the notification, provide a good-faith written response with an explanation as to why Defendants may or may not be in compliance with their obligations.

8.3     If the Plaintiffs claim that the Defendants have failed to cure alleged violations within thirty days, the Parties shall meet and confer in an attempt to resolve the dispute. The Defendants shall make their counsel available for such a conference within ten (10) working days of Plaintiffs' counsel's request. The Parties agree to use their reasonable best efforts to resolve disputes. If the Parties are unable to resolve the dispute by meeting and conferring, Plaintiffs' counsel may file a motion with the District Court. If Plaintiffs file a motion for relief and the District Court finds that the Defendants have failed to substantially comply with one or

more of the material terms of this Settlement Agreement, Plaintiffs' counsel shall be entitled to an award of reasonable attorneys' fees and costs in addition to any relief the District Court imposes.

8.4    This Settlement Agreement does not require Plaintiffs to exhaust the Whatcom County Jail's administrative grievance process prior to attempting to resolve any disputes through the dispute resolution process described in this Settlement Agreement. However, this Settlement Agreement does not affect any requirement to instituting a separate legal action in either state or federal court.

8.5    None of the provisions contained in this Settlement Agreement should be construed as creating or extinguishing any statutory rights or federal constitutional interests. In the event the District Court rules it is without jurisdiction to enforce this Settlement Agreement, the Parties may seek enforcement, including specific performance, in Washington state courts under applicable law.

## 9.    RELEASE OF CLAIMS

9.1    As of the Effective Date, Plaintiffs Gabriel Kortlever and Sy Eubanks fully release and forever discharge the Defendants from all claims for declaratory relief and injunctive relief that were brought or could have been brought in the Action.

9.2    As of the Effective Date Plaintiffs Gabriel Kortlever and Sy Eubanks fully release and forever discharge the Defendants from all claims arising out of, or in any way relating, to the Action; including, but not limited to, any general, special, exemplary, and punitive damages claims that were brought, or could have been brought, in the Action.

## 10.    ADDITIONAL TERMS

10.1    **State Law**. This Settlement Agreement shall be deemed to have been made in and shall be construed under the Laws of the State of Washington.

10.2    **Headings**. Any headings to articles, sections or paragraphs appearing herein are not part of the terms of this Settlement Agreement and shall not be interpreted as such.

10.3    **Construction**. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that would or might cause any provision to be construed against the drafter.

10.4    **Severability.** If any term or provision of this Settlement Agreement, or the application thereof to any person or circumstances, shall to any extent be invalid or unenforceable, the remainder of this Settlement Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Settlement

Agreement shall be valid and enforced to the fullest extent permitted by law. Further, the Parties shall negotiate in good faith regarding amendments to this Settlement Agreement that would, to the maximum extent possible, effectuate the intent of any provision determined to be invalid or unenforceable.

    **10.5    Complete Agreement.** This Settlement Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the Parties, and this Settlement Agreement cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the Settlement of the Action.

THE PARTIES HEREBY AGREE TO THE ABOVE SETTLEMENT AGREEMENT BY THE FOLLOWING SIGNATURES.

DATED: April 26, 2019

Whatcom County, Washington

By: _____
George Roche  Claims Admin.

DATED: April 26, 2019

Whatcom County Sheriff

By: _____
Bill Elfo

DATED: April 26, 2019

By: _____
Sy Eubanks, an individual

DATED: April 26, 2019

By: _____
Gabriel Kortlever, an individual

Settlement Agreement - 11

APPROVED AS TO FORM:

DATED: April 26, 2019

By: _____ 45693

George Roche
Attorney for Whatcom County, Washington and
Whatcom County Sheriff's Office

APPROVED AS TO FORM:

DATED: April 26th, 2019

KULSHAN LAW GROUP

By: _____ 19890

Kris Bundy
Attorney for Whatcom County, Washington and
Whatcom County Sheriff's Office

APPROVED AS TO FORM:

DATED: April 29, 2019

AMERICAN CIVIL LIBERTIES UNION

By: _____ #51512

Lisa Nowlin
Attorney for Sy Eubanks, an individual,
Gabriel Kortlever, an individual, and a purported
class of similarly situated individuals

APPROVED AS TO FORM:

DATED: April 21, 2019

K&L Gates

By: _____

Attorney for Sy Eubanks, an individual,
Gabriel Kortlever, an individual, and a purported
class of similarly situated individuals

# Exhibit A

## TITLE: OPIOID WITHDRAWAL POLICY, NON-PREGNANT FEMALES AND MALES

**PURPOSE**: This policy covers the use Medication-Assisted Withdrawal (MAW) to aid offenders who are suffering from opioid withdrawal symptoms in the Whatcom County Jail (WCJ), and are not eligible for participation in the WCJ's "Medication-Assisted Treatment For Opioid Use Disorder Maintenance Policy, Non-Pregnant Females And Males." This opioid withdrawal policy will not affect an offender's eligibility to participate in the WCJ's MAT Induction Policy.

Use of medications to treat withdrawal symptoms will be a medical decision, based on the person's appropriateness for the program and may involve one of the following medications:

- Mono Buprenorphine (Subutex)
- Buprenorphine/Naloxone (Suboxone)

Jail Health Program (JHP) staff will obtain a brief medical history, including polysubstance abuse history and a list of current medications. Use of opioids for overly sedated patients is contraindicated, and participation in this program to treat withdrawal symptoms may be delayed due to use of other opioids, over the counter drugs, prescription drugs, or any other influencer that produces the signs and symptoms of sedation. Offenders who are pregnant and using opioids at the time of booking will be evaluated and treated under the jail's Subutex protocols.

The WCJ cannot provide Methadone for offenders who are full custody. Under the WCJ's MAT Maintenance Policy, inmates who are currently on methadone for Opioid Use Disorder (OUD) treatment at the time of booking will be offered either a transition from methadone to prescriptions such as Suboxone or, Subutex, or WCJ will make reasonable attempts for alternative arrangements to keep the offender on methadone. See WCJ's MAT Maintenance Policy for further discussion of maintaining community-based methadone treatment for offenders housed in the WCJ. If alternative arrangements cannot be made, offenders will be offered supportive care for opioid withdrawal symptoms. Supportive care will be symptomatic treatment with Zofran, Loperamide, and analgesics, along with additional fluids for hydration as long as clinically indicated. If the offender is reasonably expected to be transferred or otherwise released from custody within 24 to 36 hours, the offender will receive supportive care for opioid withdrawal symptoms until such time as they are released from custody so that they may continue their methadone treatment in the community upon release.

### IDENTIFICATION OF OFFENDERS NEEDING WITHDRAWAL TREATMENT:

Initial identification of Offenders who are currently suffering from opioid withdrawal symptoms will primarily be through the WCJ's R/S (Medical Receiving/Screening form). The R/S form currently has a number of questions concerning an individual's medical history, including questions regarding participation in a community-based MAT program, current use of street drugs (including type and amount), hospital visits due to drug use, and a list of symptoms such as sweating, tremors, anxiety, lower level of response, Lethargic, etc., that can indicate recent drug use. Additional methods of identification may include:

1. Self-referral via the kites system or in conversation with one of the nursing staff.
2. Information provided by family/friends.
3. Notification by a community provider.
4. Notification by Corrections staff.
5. Notification by an attorney.

2

**DRUG SCREEN**:

As soon as is possible, a UDS (urine drug screen) will be collected. The results of the tests are protected by HIPAA, 42 CFR and NCCHC standard J-A-07and used only for patient care. This information is provided to the offenders by members of the JHP. Female offenders will also be tested for pregnancy, as the type of medication used as an opioid substitute is governed by the offender's pregnancy status.

**INITIATING MAW TREATMENT OF WITHDRAWAL SYMPTOMS**:

JHP will assess offenders through a Clinical Opiate Withdrawal Scale (COWS). The COWS system incorporates both the subjective findings and the Objective findings in an effort to accurately assess the opioid withdrawal symptomology of individual offenders. To participate in the WCJ MAW program offenders must normally score 16 or higher on the COWS scale: however, offenders who score lower on the COWS scale, but are presenting with more significant symptoms, will be assessed for medical treatment as appropriate, including MAW.

Participation in MAW program will be a medical decision, made in concert with the offender. No one factor will control the medical decisions being made, and the totality of circumstances will be considered by the JHP during the decision making process. Corrections staff may provide information to the JHP which may be considered during the offender's evaluation, but will not supplant medical considerations or determinations. Participation in the MAW program may affect an offender's housing classification temporarily due to the medical nature of the treatment involved.

When an offender is determined to be medically appropriate for treatment for withdrawal, the JHP will place the non-pregnant offender on a 3-5 day Suboxone taper and treat other symptoms with appropriate supportive medication. The length of treatment may vary, but JHP will generally use Suboxone in decreasing dosages for a period of three days. In addition to treatment with Suboxone, medically appropriate offenders will be offered supportive care in form of medications to help with gastrointestinal symptoms, analgesics for pain, muscle aches and possible fever, as well as additional fluids to prevent potential dehydration. Pregnant offenders will be placed on the established Subutex program.

**STATISTICAL REPORTS:**

At minimum, the following items will be reported in the Quarterly Medical Report:

- Number of offenders requesting to participate in the WCJ's MAW program.
- Number of offenders approved for participation in the WCJ's MAW program.
- Number of offenders who were not placed on MAW, broken out into categories such as
  - Refusal to participate
  - Not medically appropriate
  - Released prior to complete program

# Exhibit B

## TITLE: MEDICATION-ASSISTED TREATMENT FOR OPIOID USE DISORDER MAINTENANCE POLICY, NON-PREGNANT FEMALES AND MALES

**PURPOSE**: This policy covers the continuation of a community based Medication Assisted Treatment program (MAT) for non-pregnant female and male offenders.  The decision to continue the form of community based MAT treatment or withdraw offenders from the MAT medication they are currently using will be a medical decision, based on each individual offender.

**IDENTIFICATION OF OFFENDERS**:

Initial identification of Offenders who are currently on a community based MAT program will primarily be through the Jail's R/S (Medical Receiving/Screening form).  The R/S form currently has a number of questions concerning an individual's medical history and will be updated by members of the Jail's Health Program (JHP) to expand the level of detail specific to a MAT program.

Additional methods of identification may include:

1. Self-referral via the kites system or in conversation with one of the nursing staff.
2. Information provided by family/friends.
3. Notification by a community provider.
4. Notification by Corrections staff.
5. A check of the State's Prescription Monitoring Program (PMP) website.

**DRUG SCREEN**:

As soon as is possible, a UDS (urine drug screen) will be collected. The results of the tests are protected by HIPAA, 42 CFR and NCCHC standard J-A-07and used only for patient care. This information is provided to the offenders by members of the JHP.   Female offenders will also be tested for pregnancy, as the type of medication used as an Opioid substitute is governed by the offender's pregnancy status.

**CONFIRMATION OF COMMUNITY TREATMENT**:

Once it is confirmed that the offender has a positive drug screen, is showing symptoms of withdrawal, or is listed in the PMP, the JHP will request an ROI (Release of Information) for the offender's community based MAT provider.  The provider will be contacted as soon as it is possible to obtain records verifying participation in the community program.  Whenever possible the information shall include, but not be limited to:

- Diagnosis of OUD (Opioid Use Disorder) name of practitioner and when diagnosis was made.
- Date program was started.
- Treatment plan including type of medication and dosage.
- Counseling provided by the prescribing clinic or prescriber.
- Last visit.
- Treatment expectations.
- Any violations of program contract/expectations.
- Any complicating issues (medical, cognitive, mental health, and substance use disorders).

2

- Willingness to resume treatment when the individual is out of custody.
- JHP may also contact the Offender identified Pharmacy to verify prescription history and details (number of prescription, provider, dosage instructions).

**MAINTENANCE PROGRAM:**

Records will be reviewed as soon as they are received.  The WCJ (Whatcom County Jail) can provide the following medications as part of a MAT program:

- Mono Buprenorphine (Subutex)
- Buprenorphine/Naloxone (Suboxone)
- Naltrexone (Vivitrol)

The WCJ cannot provide Methadone for offenders who are full custody.  The Whatcom County Jail shall allow inmates who are currently on methadone for OUD treatment at the time of booking to transition from methadone to prescriptions such as Suboxone, Subutex or Vivitrol, and to continue as long as clinically indicated. If the offender is reasonably expected to be transferred or otherwise released from custody within 24 to 36 hours, the offender will receive supportive care until such time as they are released from custody, so they may continue their methadone treatment upon release. If the offender does not wish to transition from methadone to Suboxone, Subutex or Vivitrol, the Whatcom County Jail will make reasonable attempts for alternative arrangements to keep the offender on methadone. Alternative arrangements could include: transferring the offender to the Skagit County Jail upon approval of the offender and Skagit County; communication with prosecution and defense attorneys about the possibility of seeking in court a less restrictive alternative placement outside of the jail, or any other means for keeping the offender on methadone that is approved by the jail. If alternative arrangements cannot be made, clinically appropriate offenders will be offered the option of participating in MAT tapering.

Offenders who are on Work Release or Electronic Home Detention/Monitoring may continue on with a community provider for Methadone, even if it means they may need to travel to another location for the medication.  Offenders who are on full custody will be withdrawn from Methadone if they remain in custody for up to 5 days.

**FACTORS FOR CONTINUATION OF MAT**:

Offenders will be evaluated for continuation of a MAT program using the following factors as part of the decision-making process:

- A positive U/A drug screen for opioids at booking or exhibiting symptoms of opioid withdrawal.
- Desire to continue treatment.
- Verification of current participation in a community MAT program, review of the conditions set by the current community provider, and the history related to performance under the community treatment program.
- Absence of medical contraindications to continue on a MAT program.
- Positive U/A for other illegal drugs while on the WCJ's MAT program.

Continued participation in MAT will be a medical decision, made in concert with the offender. No one factor will control the medical decisions being made, and the totality of circumstances will be considered by the JHP during the decision making process. Corrections staff may

3

provide information to the JHP which may be considered during the offender's evaluation, but will not supplant medical considerations or determinations.

**CRITERIA THAT MAY RESULT IN DISCONTINUATION IN A PROGRAM**:

- Offender refusal to sign a ROI with their community provider.
- Community provider recommends not to continue for medical/compliance reasons
- Offender desires to stop participating in the program.
- There are medical issues that preclude the offender from participating.
- Offender discovered to be diverting or attempting to divert their medications.
- Refusal to provide random urine drug screens to check for compliance.
- Evidence of use of non-prescribed and/or illegal drugs while in custody.
- Impending transfer to a facility that does not have a MAT program.
- If the JHP makes the decision to revoke participation in the MAT program, the offender will be informed, in person, of what led to the decision.  Offenders who are being removed from a program will be tapered off of their MAT medication (pursuant to WCJ's Opioid Withdrawal Policy).
- Offenders can appeal the decision to remove them from the MAT program.  JHP providers will meet with the offender and after discussion, may or may not allow an offender another opportunity to participate.

**OFFENDER NOTIFICATION:**

Information on all portions of the WCJ's MAT  program will be placed in the Inmate Handbook, posted in a variety of locations in the jail and discussed between the offender and JHP and/or Corrections Staff.  The Handbook and signage will be in multiple languages that reflect the average offender population.  Use of the language line will be available for offenders for whom English is not their primary language.

**HOUSING:**

Offenders will be housed primarily at the Downtown jail, but may, depending on medical status and classification, be housed at the Work Center.  Housing within the facility will be combination of medical need and classification.

**STATISTICAL REPORTS:**

At minimum, the following items will be reported in the Quarterly Medical Report:

- Number of offenders requesting continuation of their community treatment.
- Number of offenders approved for continuation of their community program.
- Number of offenders who are removed for cause/medical judgement.
- Number of offenders who are released from custody still participating on a program.

4

# Exhibit C

**TITLE**: **MEDICATION-ASSISTED TREATMENT FOR OPIOID USE DISORDER INDUCTION POLICY**

**PURPOSE**: This policy covers the voluntary induction of Medication-Assisted Treatment (MAT) for offenders who are requesting to participate in the Whatcom County Jail's (WCJ) MAT program.  Acceptance to the program will be a medical decision, based on the person's appropriateness for the program and may involve one of the following medications:

- Mono Buprenorphine (Subutex)
- Buprenorphine/Naloxone (Suboxone)
- Naltrexone (Vivitrol)

Offenders who are pregnant and using opioids at the time of booking will be evaluated and treated under the WCJ's Subutex protocols.

Ideally this program will include a counseling component prior to or in conjunction with, the use of these medications.  This may not be possible in the current facility due to resource restrictions.  Any offender selected for the program will be strongly encouraged to initiate counseling as part of their treatment regimen.

**IDENTIFICATION OF MAT PROGRAM CANDIDATES**

Initial identification of Offenders who may be appropriate for starting a MAT program while they are in custody are anticipated to be primarily self-referred or identified by Jail Health Program (JHP) staff.

Self-referral will come via the medical kite system or when speaking with a JHP staff member.

Referrals from other sources will also be considered. This will include, but not be limited to:

- JHP staff,
- Family or friends
- Attorneys
- Probation Officers
- Corrections staff
- Ancillary staff or volunteers such as teachers, faith based volunteers, teachers.

In the event that JHP receives a referral from any of the other sources, the offender will be interviewed by a JHP staff member, informed of the referral and inquire as to the offender's desire to be considered for this portion of the WCJ's MAT program.

Any offender indicating they are interested in participating in the MAT program will receive a medical and behavioral health evaluation including an assessment to determine if they meet diagnostic criteria for Opioid Use Disorder (OUD) as specified by the Diagnostic and Statistical Mental Disorders, 5th Edition and are medically appropriate for the program.

All candidates for the program will provide a UDS (urine drug screen) to determine what drugs, if any, are in their system.  If the offender is a female offender, an additional test will be done to determine if she is pregnant.  If she is pregnant, she will be immediately moved to the Subutex medical protocols for pregnant women.  The results of the tests are protected by HIPAA, 42 CFR and NCCHC standard J-A-07and can be used only for patient care. This information is provided to the offender by members of the JHP.

2

**OFFENDER TRANSFERS**:

Prior to inducing prospective offenders under the WCJ's MAT Induction Policy, the JHP, in consultation with the WCJ's Corrections staff, will determine if it is likely that the offender will be released to another Corrections facility.  If so, a determination will be made if that facility has an existing MAT program.

If the receiving facility has an existing MAT program, included in the medical transfer information will be the information concerning the offender's participation in the WCJ's MAT program.

If the facility does not have a MAT program, the offender will not be induced under the WCJ's MAT induction program, and the JHP will evaluate whether withdrawal treatment is medically appropriate under the WCJ's Opioid Withdrawal Policy.

**PARTICIPATION IN THE INDUCTION PHASE OF MAT**:

Induction will include 2 major components:

1) Medical
2) Logistics

**Medical:**

Once accepted into the WCJ's MAT Induction program, offenders may choose either Suboxone or Vivitrol.  Pregnant women will be restricted to Subutex for medical reasons.  Methadone is not available for opioid use disorder treatment in the Whatcom County Jail.

Offenders accepted into this phase and choosing Suboxone will be placed on a multi-day schedule to provide increasing dosages of Suboxone over a 3-5 day time span to titrate the medication until such time as it meets the appropriate therapeutic dose.  Every effort will be made to coordinate this process with the offender's release date.

Offenders who have received the gradually increasing doses of Suboxone and are at a therapeutic level will remain on that dosage until such time as they are released.  At release, they will be given an appropriate supply of Suboxone, up to 7 days, to provide a bridge between the jail and the community provider, provided that the JHP determines releasing the offender with up to a 7 day supply of Suboxone is medically appropriate treatment.  No additional medication or prescriptions will be provided once the offender has been released from the WCJ.

If the offender choses Vivitrol, they will be given a single, long-acting injection of Vivitrol that will last approximately 30 days.

For pregnant offenders, see the Subutex policy.

**Logistics:**

Once the determination is made that an offender is appropriate for participation in the WCJ's MAT induction program, the JHP staff will work with local community providers to determine if a specific provider will accept the offender for continued MAT treatment and if so, set up an appointment between the provider and the offender.  If the provider requires a phone intake interview, JHP staff will facilitate this process.

At this time, the WCJ program will not direct all of the inducted offenders to any one provider or clinic. JHP will work with the offender to determine if they have a preference and when possible,

3

that will be taken into consideration. Once the provider is selected and has agreed to provide services to the individual, JHP will have the offender sign a Release of Information (ROI) and will provide the appropriate medical information to the provider.

JHP will be placing information regarding the offender's medication, directions to the provider, and the consequences of not following the dosing information, into the participant's property box prior to release.

**STATISTICAL REPORTS:**

At minimum, the following items will be reported in the Quarterly Medical Report:

- Number of offenders requesting to participate in the WCJ's MAT induction program.
- Number of offenders approved for participation in the WCJ's MAT induction program.
- Number of offenders who are removed for cause/medical judgment from the WCJ's MAT induction program.
- Number of offenders who are released from custody still participating on the WCJ's MAT induction program and whether a supply of Suboxone was provided upon release.